## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES R. BLACKBURN, derivatively, on behalf of PELOTON INTERACTIVE INC., | Civ. No. 22-cv-01618-GBW |
| Plaintiff, | REDACTED - PUBLIC VERSION |
| v. | |
| JOHN FOLEY, JILL WOODWORTH, KAREN BOONE, JON CALLAGHAN, JAY HOAG, PAMELA THOMAS-GRAHAM, ERIK BLACHFORD, HOWARD DRAFT, WILLIAM LYNCH, THOMAS CORTESE, HISAO KUSHI, and MARIANA GARAVAGLIA, | |
| Defendants, | |
| PELOTON INTERACTIVE INC., | |
| Nominal Defendant. | |

## <u>VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT</u>

## PUBLICLY FILED - REDACTED VERSION

By and through his undersigned counsel, plaintiff Charles R. Blackburn ("Plaintiff") brings this shareholder derivative action on behalf of Nominal Defendant Peloton Interactive, Inc. ("Peloton" or the "Company") against certain current and former officers and members of the Board of Directors of the Company (the "Board"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning himself and, as to all other matters, upon the investigation of counsel, which includes, *inter alia*, the public filings of the Company filed by the Securities and Exchange Commission (the "SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record, and books and records produced by the Company in response to Plaintiff's demand pursuant to 8 Del. C. §220 of the Delaware General Corporation Law.

## I.      NATURE AND SUMMARY OF THE ACTION

1.      Peloton is self-described as the largest fitness interactive platform with 6.6 million members. Among other things, Peloton specializes in home exercise equipment including bikes and treadmills and accompanying subscriptions.

2.      The Individual Defendants, among other things, made or caused the Company to make false and misleading statements that failed to disclose the security defects of its Tread+ treadmill and failed to maintain adequate internal controls.  Given the critical importance of this product to be safe in households, the individual defendants were or should have been aware of the design flaws in this key product.  Nevertheless, Peloton's co-founder and Chief Executive Officer ("CEO") defendant John Foley and other insiders sold millions of dollars of stock as discussed herein.

3.      Peloton experienced phenomenal growth during the COVID-19 pandemic.  The stock price reached a high of $171.09 per share on January 14, 2021.  The stock has recently hovered at $12.00 per share.

1

4.      On April 17, 2021, the U.S. Consumer Product Safety Commission ("CPSC") issued a hazard warning for Peloton's Tread+ because the agency was aware of 39 incidents, including one resulting in death, where children became trapped, pinned, and pulled under the rear roller of the product. According to the CPSC's press release, "at least one incident occurred while a parent was running on the treadmill, suggesting that the hazard cannot be avoided simply by locking the device when not in use."  As a result, the agency "urge[d] consumers with children at home to stop using the product immediately." Ironically, marketing for Peloton treadmills included a woman exercising along side a child.

5.      Initially, Peloton responded with a press release that "[t]here is no reason to stop using the Tread+, as long as all warnings and safety instructions are followed," calling the CPSC's press release "inaccurate and misleading." However, the same press release noted that Peloton's co-founder and Chief Executive Officer defendant Foley, had sent a letter to members on March 18, 2021 reminding them to follow the critical warnings and safety instructions, and that, as a result, "Peloton received additional reports of incidents that had previously occurred." The Company reported that it had sought to issue a joint announcement with the CPSC, but the agency "unfairly characterized Peloton's efforts to collaborate and to correct inaccuracies in CPSC's press release as an attempt to delay."

6.      On May 5, 2021, Peloton and CPSC however did issue a joint release announcing the recall of Tread+ treadmills, which impacted 125,000 units sold between September 2018 and April 2021 for approximately $4,295.  A Washington Post article stated that "[a]n official familiar with the CPSC's concerns said the agency was alarmed by reports of victims being pulled under the machines and suffering injuries that included broken bones and head trauma."  That same official stated "[t]his doesn't happen with other treadmills. It is a different type of hazard pattern

than is typically seen." Similarly, a May 8, 2021, a Wall Street Journal article noted that CPSC said the very features that set Peloton treadmills apart from other treadmills is what led to the safety issues, including the height and the lack a rear guard (which is intended to give it a more sleeker look).

7.     Peloton faces investigations from the Departments of Justice and Homeland Security, and the SEC in connection with its reporting of the injuries and insider selling.  The Company is also named in a securities class action and personal injury actions as a result of the Tread +.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in Delaware and is thus a citizen of this District. Additionally, the Company's bylaws contain a forum selection clause requiring shareholder derivative actions like this one to be filed in this District.

## III.     PARTIES

10.     Plaintiff purchased shares in Peloton in September 2019 and has continuously owned his shares since that date.

11.     Nominal Defendant is a Delaware corporation based in New York, New York with its principal executive offices located at 125 West 25th Street,  New York, NY 10001.

12.     Defendant John Foley ("Foley") is a Co-Founder and served as a director and CEO

of the Company until February 2022.  For the 2020 and 2021 fiscal years, defendant Foley received substantial compensation, including an annual base salary of $1,000,000 each year.

13.     Defendant Jill Woodworth ("Woodworth") was the Company's Chief Financial Officer ("CFO") from April 2018 to June 2022.  For fiscal years 2020 and 2021, Woodworth received substantial compensation, including an annual base salary of $750,000 each year.

14.     Defendant Karen Boone ("Boone") has served as a member of the Board since January 2019.  She is the Chair of the Audit Committee and a member of the Nominating, Governance and Corporate Responsibility Committee.  Boone became the Company's chairperson of the Board effective September 12, 2022.  Boone is entitled to substantial compensation as a director including a stock option grant  valued at $250,000.

15.     Defendant Jon Callaghan ("Callaghan") has served as a member of the Board since April 2015.  Callaghan is a member of the Audit Committee, the Compensation Committee, and the Nominating, Governance and Corporate Responsibility Committee.  Callaghan received substantial compensation as a director, including a stock option grant of $250,000.

16.     Defendant Jay Hoag ("Hoag") has served as a member of the Board since August 2018.  He is the Chair of the Compensation Committee and became a member of the Audit Committee upon the resignation of defendant Howard Draft in October 2021. As a director, Hoag is entitled to substantial compensation as a director, including a stock option grant of $250,000.

17.     Defendant Pamela Thomas-Graham ("Thomas-Graham") has served as a member of the Board since March 2018. She is the Chair of the Nominating, Governance and Corporate Responsibility Committee and a member of the Compensation Committee. She is entitled to substantial compensation as a director including a stock option grant of $250,000.

18.     Defendant Erik Blachford ("Blachford") served as a member of the Board from

April 2015 to February 2022 and was the Company's lead independent director during the relevant period. He was a member of the Compensation Committee and the Nominating, Governance and Corporate Responsibility Committee.  Blachford is entitled to substantial compensation as a director including an annual stock option grant valued at $250,000.

19.     Defendant Howard Draft ("Draft") served as a member of the Board from April 2015 until his resignation effective October 25, 2021.  He was a member of the Audit Committee until his resignation.  As a director, he received substantial compensation including a stock option grant of $250,000.

20.     Defendant William Lynch ("Lynch") served as a member of the Board from August 2019 to May 2022 and as the Company's President from January 2017 to February 2022. For the 2020 and 2021 fiscal years, defendant Lynch received substantial compensation for his role as the Company's President, including an annual base salary of $1,000,000 each year.

21.     Defendant Thomas Cortese ("Cortese") is a Co-Founder and has served as Chief Product Officer since August 2021.  Prior to that, he served as Chief Operating Officer since February 2012. For fiscal years 2020 and 2021, defendant Cortese received substantial compensation, including, *inter alia*, an annual base salary of $500,000 each year.

22.     Defendant Hisao Kushi ("Kushi") is a Co-Founder and served as Chief Legal Officer from June 2015 to October 2022 and Chief Culture Officer from August 2021 to October 2022.

23.      Defendant Mariana Garavaglia ("Garavaglia") was the Company's Chief Operating Officer ("COO") from August 2021 to February 2022.  From May 2020 to August 2021, Garavaglia served as the Chief Business Operations Officer.

24.     Defendants Foley, Woodworth, Boone, Callaghan, Hoag, Thomas-Graham,

Blachford, Draft, and Lynch are hereinafter referred to as the "Individual Defendants." Defendants Lynch, Boone, Foley, Callaghan, Draft, Thomas-Graham, Garavaglia, Cortese, Kushi, and Woodworth are hereinafter referred to as the "Insider Selling Defendants."

## IV.    DUTIES OF THE INDIVIDUAL DEFENDANTS

25.    By reason of their positions as officers, directors, and/or fiduciaries of Peloton and because of their ability to control the business and corporate affairs of Peloton, at all relevant times, the Individual Defendants owed Peloton and its stockholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Peloton in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of Peloton and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Peloton and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Peloton, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Peloton, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

27.    To discharge their duties, the officers and directors of Peloton were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Peloton were required to, among other things:

(a)   Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)   Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)   Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)   When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.    SUBSTANTIVE ALLEGATIONS

### A.    Background

28.    Peloton operates an interactive fitness platform that offers immersive classes on its Peloton Bike and Peloton Tread+.  Its revenue is primarily generated from the sale of these products and the associated recurring revenue.

29.    The Tread+ is a treadmill that purportedly offers a "one-of-a-kind experience for runners, strength trainers, and bootcamp enthusiasts."  Rather than the traditional continuous nylon belt, the Tread+ is composed of 59 individually-mounted aluminum slats that are coated with rubber and roll on a system of ball bearings.  It has a large frame measuring 72.5 inches long, 36.5 inches wide, and 72.0 inches high.  As a result, the Tread+ weighs about 455 pounds.

30.    Unlike traditional treadmills, the Tread+ did *not* have a rear guard or safety bar, which would prevent objects from being pulled under the treadmill by the belt.  The only safety measure is a magnetic safety key that stops the belt when the key is pulled from the console.

31.     Peloton was obligated under Section 15 of the Consumer Product Safety Act to "immediately" notify the U.S. Consumer Product Safety Commission ("CPSC") upon receipt of

information that "reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard . . . or creates an unreasonable risk of serious injury or death."  Specifically, Peloton has a duty to notify when the information reasonably supports the conclusion that such a "risk" is present; the CPSC has warned that companies "should not wait for such serious injury or death to actually occur before reporting."  As a result, Peloton had a duty to gather and maintain information about the safety of the Tread+.

32.     The Individual Defendants were aware that the safety of Peloton's products is material to the Company's continued success.  The Company's 10-K for the period ended June 30, 2020 (the "2020 10-K," filed on September 11, 2020) states that the "principal competitive factors that companies in our industry need to consider include . . . product quality and safety[.]"  The 2020 10-K also states that "[a]ny negative publicity related to the perceived quality and safety of our products could affect our brand image, decrease consumer and Member confidence and demand, and adversely affect our financial condition and operating results."  The 2020 10-K was signed by defendants Foley, Woodworth, Blachford, Boone, Callaghan, Draft, Hoag, Lynch, and Thomas-Graham.

33.     As early as November 2019, the Individual Defendants were on notice that Tread+ caused injuries to children.  One lawsuit alleges that a 13-year-old girl's leg was dragged under the machine.  In March 2020, a 3-year-old child who was pulled under the Tread+, leading to another lawsuit in 2021.  According to the CPSC, in November 2020, a 6-year child was injured after being pulled underneath a treadmill.[1]

---

[1]     https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3218621.

**B.      The Individual Defendants Caused the Company to Issue Materially Misleading Statements**

34.     The 2020 10-K notes that defects in its products could cause material harm to the

Company by way of lost revenue in addition to reputational harm:

> Our products and services may be affected from time to time by design and manufacturing defects that could adversely affect our business and result in harm to our reputation. We offer complex hardware and software products and services that can be affected by design and manufacturing defects. Sophisticated operating system software and applications, such as those offered by us, often have issues that can unexpectedly interfere with the intended operation of hardware or software products. Defects may also exist in components and products that we source from third parties. Any such defects could make our products and services unsafe, create a risk of environmental or property damage and personal injury, and subject us to the hazards and uncertainties of product liability claims and related litigation. In addition, from time to time we may experience outages, service slowdowns, or errors that affect our fitness and wellness programming. As a result, our services may not perform as anticipated and may not meet customer expectations. There can be no assurance that we will be able to detect and fix all issues and defects in the hardware, software, and services we offer. Failure to do so could result in widespread technical and performance issues affecting our products and services and could lead to claims against us. We maintain general liability insurance however, design and manufacturing defects, and claims related thereto, may subject us to judgments or settlements that result in damages materially in excess of the limits of our insurance coverage in addition we may be exposed to recalls, product replacements or modifications, write offs of inventory, property and equipment or intangible assets, and significant warranty and other expenses such as litigation costs and regulatory fines. If we cannot successfully defend any large claim, maintain our general liability insurance unacceptable terms, or maintain liquid coverage against potential claims, our financial results could be adversely impacted. Further, quality problems could adversely affect the experience for users of our products and services, and result in harm to our reputation, loss of competitive advantage, poor market acceptance, reduce demand for our products and services, delay in new product and service introductions, and lost revenue.

35.     The 2020 10-K did not include the injuries that were known to the CPSC.

36.     On November 6, 2020, Peloton filed its quarterly report on Form 10-Q for the

period ending September 30, 2020.  It included the same language as referenced above that design

and manufacturing defects can cause material harm to both reputation and revenue.  The 10-Q also

included a SOX certification signed by defendant Foley verifying, *inter alia*, the accuracy of the

Company's financial reporting and assurances of its governance and internal controls.

37.     On February 5, 2021, Peloton filed its quarterly report on Form 10-Q for the period ending December 31, 2020.  It contained the same certifications and statements as in the first quarter 10-Q regarding financial accuracy of the statements and the importance of the design and safety of its products.

38.     ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████

39.     These statements were materially misleading because they failed to disclose that the Tread+ led to serious injuries for children and that the Company was reasonably likely to face reputational harm, including government investigations and product recalls.

**C.     The Truth Begins to Emerge**

40.     On March 18, 2021, Peloton published an email from defendant Foley to Tread+ owners disclosing the death of a 6 year-old child involving the Tread+.  The email acknowledges that there were a "handful of incidents" involving children but assuring customers that all products were built with "safety in mind."

41.     In response, on April 17, 2021, the CPSC issued a press release urging consumers to stop using the Tread+. The press release specifically referred to 39 incidents involving the Tread+ including one death.

42.     The next day, defendant Foley sent an email to Tread+ users and published on the Company's website stating that Peloton would not stop selling or recall the units.

43.     On April 20, 2021, a consumer class action lawsuit was filed against the Company

in the United States District Court for the Northern District of California.  A notice of settlement was filed in this action which concedes that the action had meritorious claims.

44.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

45.  On May 5, 2021, the Company issued the recall for both the Tread and Tread+ products.  Defendant issued an apology on behalf of the Company stating in part: "Peloton made a mistake in our initial response to the Consumer Product Safety Commission's request for that we recall the Tread+.  We should have engaged more productively with them from the outset.  For that, I apologize."  On this news, the Company's stock price fell $14.08, or 14.6%, to close at $82.62 per share on May 5, 2021.

46.  In the Company's Form 10-Q filed on May 7, 2021 for the period ending March 31, 2021, the Company estimated a $50 million reduction in revenue as a result of the recall.

47.  Securities class actions were filed shortly thereafter alleging that the price of Peloton stock was artificially inflated by false and misleading statements made by the Company, and defendants Foley and Woodworth. They have been consolidated as *In re Peloton Interactive, inc. Securities Litigation*, Case No. 1:21-cv-02369 (E.D.N.Y.) ("Securities Class Action").

**D.  Insider Trading**

48.   While the Company was facing these catastrophic injury incidents, certain Company insiders managed to reap large financial benefits.  As reported in the financial media, defendants Lynch, Boone, Foley, Callaghan, Draft, Thomas-Graham, Garavaglia, Cortese, Kushi, and Woodworth sold approximately $500,000,000 worth of their stock collectively within a week or few weeks after a February 3, 2021 incident involving a catastrophic child injury connected to

the Tread+ and about a month before Peloton publicly disclosed the child's injury from the Tread+. These sales also prompted an investigation by the SEC.

49.     Specifically, defendant Foley sold 600,000 shares for proceeds of $76,894,000 from November 9, 2020 through April 15, 2021.  Defendant Boone sold 135,357 shares during the period February 8, S2021 through February 12, 2021 with proceeds of over $20,000,000. Defendant Lynch sold 1,474,927 shares for proceeds of $179,680,051 from September 14, 2020 through April 14, 2021.  Defendant Thomas-Graham sold 150,000 shares for proceeds of $18,941,129 from November 9, 2020 through February 16, 2021.  Defendant Draft sold 160,000 shares with proceeds of $19,085,068 during the period September 17, 2020 through April 19, 2021. Defendant Callaghan sold 90,000 shares with proceeds of $11,467,950 from November 11, 2020 through April 14, 2021. Defendant Cortese sold 650,000 shares for proceeds of $73,785,231 from September 14, 2020 through April 12, 2021. Defendant Kushi sold 452,890 shares for proceeds of $52,352,654 from September 14, 2020 through April 21, 2021. Defendant Garavaglia sold 134,727 shares for proceeds of $19,275,422 from September 28, 2020 through April 5, 2021. Defendant Woodworth sold 200,000 shares for proceeds of $22,970,296 from November 9, 2020 through February 16, 2021.

**E.     The Individual Defendants Issued a Materially Misleading Proxy Statement**

50.     On October 22, 2020, defendants Foley, Boone, Callaghan, Hoag, Thomas-Graham, Blachford, Draft, and Lynch issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held December 9, 2020. In the proxy statement, these eight directors solicited stockholder votes in favor of three management proposals, including the reelection of Blachford, Draft, and Thomas-Graham to new terms as directors.

51.     The proxy statement stated that the Board exercised "[c]omprehensive risk oversight practices" and that the Audit Committee "inquir[ed] about significant risks, review[ed] our policies for risk assessment and risk management and assess[ed] the steps management has taken to control

these risks."

52.     The proxy statement was materially misleading because it failed to disclose that the Board had not implemented adequate internal controls to ensure the safety of its products, which presented a material risk to the safety of Peloton's customers and a reputational risk for the Company. A reasonable shareholder would have found the truth to be material when deciding to vote for or against these proposals.

53.     On December 14, 2022, Peloton filed a Form 8-K with the SEC disclosing the results from the votes on the proposals contained in the proxy statement. In particular, defendants Blachford, Draft, and Thomas-Graham were reelected to new terms as directors. The reelection of these three directors based on the misleading statements contained in the proxy statement and other public filings was a fundamental link in these directors' continued breaches of fiduciary duties and their continued enrichment at the expense of the Company's unaffiliated stockholders.

## VI.     DAMAGES TO THE COMPANY

54.     As a direct and proximate result of the Individual Defendants' conduct, Peloton has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

(a)     Costs, including reputational harm, resulting from the product recall of the Tread+;

(b)     Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Peloton;

(c)     Legal fees paid in connection with the Securities Class Action; and

(d)     Any funds paid to settle the Securities Class Action.

55.     In addition, Peloton's business, goodwill, and reputation with its business partners, regulators, and shareholders has been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives

of management are now in serious doubt.

56.    The actions complained of herein have irreparably damaged Peloton's corporate image and goodwill. For at least the foreseeable future, Peloton will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and misled the investing public, such that Peloton's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.    DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.    Plaintiff brings this action derivatively in the right and for the benefit of Peloton to redress injuries suffered, and to be suffered, by Peloton as a direct result of wrongdoing alleged herein. Peloton is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

58.    Plaintiff will adequately and fairly represent the interests of Peloton in enforcing and prosecuting its rights.

59.    Plaintiff has continuously been a shareholder of Peloton at times relevant to the wrongdoing complained of and is a current Peloton shareholder.

60.    The Board currently consists of seven directors: defendants Boone, Callaghan, Thomas-Graham, Hoag, and non-party directors Barry McCarthy, Angel Mendez, and Jonathan Mildenhall.  Plaintiff did not make a demand on the Board prior to bringing this action because a majority of the board face substantial likelihood of personal liability and thus incapable of making an independent and disinterested decision as to whether to bring the claim asserted herein.

61.    As detailed herein, defendants Boone, Callaghan, Hoag, and Thomas-Graham breached their fiduciary duties of care and loyalty by failing to exercise proper oversight over Peloton's business including, *inter alia*, Tread+.  As discussed above, these defendants were aware of the importance of the design and safety of their products, the regulatory requirements regarding

14

the sale of these products as well as the injuries that resulted from the Tread+. Notwithstanding Peloton's explicit duty to maintain injury records and report any product defect that "creates an unreasonable risk of serious injury or death," Boone, Callaghan, Hoag, and Thomas-Graham failed to implement a system of oversight of such injury instances. ████████████████████████

██████████████████████████████████████

62.     These same individuals also allowed the Company to make false and misleading statement or omissions of material facts in SEC filings.  As set forth above, three of them (Boone, Callaghan, and Thomas-Graham) engaged in insider selling.  Even worse, they took no action until there was a fatality.

63.     With respect to defendant Boone, she has served as a director of Peloton since January 2019 and chair of the Audit Committee since September 2022.  Boone sold $20.2 million of stock while in possession of material non-public information.  Boone was a signatory of the 2020 10-K.  As a member of the Audit Committee, in accordance with its charter, she was charged with the Company's legal and regulatory requirements. Like the other members of the Audit Committee, she faces liability for breach of fiduciary duty for allowing the Company to operate without adequate controls.

64.     With respect to defendant Callaghan, he has served as a director since April 2015 and served on the Audit Committee and Nominating, Governance, and Corporate Responsibility Committee. Defendant Callaghan receives substantial compensation for his role as a director and sold $11.5 million of stock while in possession of material non-public information.  Defendant Callaghan also signed the 2020 10-K and has personal liability for his role on the Audit Committee.

65.     With respect to defendant Thomas-Graham, she has served as a director since March 2018.  She is the chair of the Nominating, Governance, and Corporate Responsibility Committee

and a member of the Compensation Committee.  She receives substantial compensation for her role as a director.  As set forth above, Thomas-Graham sold $25.1 million worth of stock while in possession of material non-public information.  She also signed the 2020 Form 10-K which as set forth herein contained false and misleading statements.  As a member of the Nominating, Governance and Corporate Responsibility Committee, she was charged with corporate governance and oversight responsibilities.  Among other things, she and the other members of the committee should have coordinated with the CPSC to insure an efficient recall of the treadmills in a manner designed to protect the Company's reputation.

66.     With respect to defendant Hoag, he has served as a director of the company since 2018.  He is also a member of the Compensation Committee.  Like the other directors, he receives substantial compensation for his role as a director of the Company.  Defendant Hoag also signed the 2020 10-K.  He also has longstanding business and personal relationships with defendant Blachford as both serve together on the board of directors of Zillow Group, Inc.

67.     In addition, non-party Barry McCarthy a current board member and CEO of the company cannot be considered independent with respect to his role as a board member.  NASDAQ rule 5600 makes clear that a director cannot be considered independent while serving as the company CEO.

68.     The independence of the other non-defendant directors including Mr. Mendez and Mr. Mildenhall is also called into question since they approved appointing Boone to chairperson of the board and are eligible to receive substantial compensation for their service as board members. This compensation is directly connected to their continued tenure on the board.

## COUNT I

### Breach of fiduciary duty against the Insider Selling Defendants

69.     Plaintiff incorporates by reference and real edges each and every allegation

contained above as though fully set forth herein.

70.     By virtue of their positions as officers and directors the Insider Selling Defendants owed fiduciary duties of loyalty and good faith to the Company.

71.     At the time the Insider Selling Defendants initiated their sales of nearly 500 million dollars of Peloton stock they knew that certain products had significant design defects and were fundamentally unsafe and could result in serious personal injuries.

72.     The reaction of the stock price after Peloton removed certain products from the market makes clear that the financial market considered these disclosures to be highly material. As detailed above the insider defendants knew that such information was material.  Nevertheless, they sold substantial amounts of their  stock.

73.     The insider selling defendants sold their stock before non public information in their possession could be fully disclosed to the public and harm the company stock price thus improperly benefiting from this breach of fiduciary duty.

74.     Plaintiff, on behalf of Peloton, has no adequate remedy of law.

## COUNT II

### Breach Of Fiduciary Duty Against The Individual Defendants

75.     Plaintiff incorporates by reference and we alleges each and every allegation contained above, as though fully set forth herein.

76.     The Individual Defendants owed and owed Peloton fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owe the Company, the highest obligation of loyalty and good faith.

77.     The Individual Defendants violated and breached their fiduciary duties by issuing the materially misleading statements alleged herein.

78.     As a direct and proximate result of the Individual Defendants breaches of their

17

fiduciary obligations, the Company has sustained significant damages as alleged herein. As a result, these defendants are liable to the Company.

**COUNT III**

**(Against Defendants Foley, Boone, Callaghan, Hoag, Thomas-Graham, Blachford, Draft, and Lynch For Violations of Section 14(a) of the Exchange Act)**

79.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80.     Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's proxy statement filed on October 22, 2020 violated §14(a) and Rule 14a-9 because it solicited stockholder approval for director reelection while failing to disclose material facts about Peloton's business.

81.     In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

82.     The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement. The proxy statement solicited stockholder votes for: (i) director reelection; (ii) executive compensation; (iii) ratification of the Company's independent accounting firm. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

83.     The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

18

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Peloton, demands judgment as follows:

A.      Declaring that plaintiff may maintain this action on behalf of Peloton and that plaintiff is an adequate representative of the Company;

B.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties;

C.      Directing Peloton to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Peloton and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.      a proposal to strengthen the Company's controls over financial reporting;

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to strengthen Peloton's oversight of its disclosure procedures;

4.      a provision to control insider transactions; and

5.      a provision to permit the stockholders of Peloton to nominate at least three candidates for election to the Board;

D.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Peloton has an effective remedy;

E.      Awarding to Peloton restitution from defendants, and each of them, and ordering

disgorgement of all profits, benefits, and other compensation obtained by the defendants;

F.      Awarding to plaintiff the costs and disbursements of the action, including

reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

Dated: December 22, 2022

**OF COUNSEL**

**GLANCY PRONGAY & MURRAY LLP**
Daniella Quitt
Benjamin Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, New York 10151
Telephone: (212) 935-7400
E-mail: dquitt@glancylaw.com
E-mail: bsachsmichaels@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com

**Additional Counsel:**

**LAW OFFICES OF ALFRED G. YATES, J.R., P.C.**
Alfred G. Yates, Jr.
1575 McFarland Road, Suite 305
Pittsburgh, PA 15216
Telephone: (412) 391-5164

**COOCH AND TAYLOR, P.A.**

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
Andrew R. Ralli (#6733)
The Nemours Building
1007 N. Orange Street, Suite 1120
Wilmington, DE 19801
(302) 984-3800
bbennett@coochtaylor.com
aralli@coochtaylor.com

*Delaware Counsel for Plaintiff*